```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BLUEFIELD
```

**DUSTIN I. YEARY,**

       **Plaintiff,**

**v.**                                          **CIVIL ACTION NO. 1:14-19114**

**BART MASTERS, Warden,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendation. Magistrate Judge VanDervort submitted his proposed findings and recommendation on December 2, 2014. In that Proposed Findings and Recommendation, Magistrate Judge VanDervort recommended that the district court dismiss Yeary's application for Writ of Habeas Corpus under 28 U.S.C. § 2241 and remove this matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge VanDervort's Findings and Recommendation. The failure of any party to file such objections constitutes a waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985). Moreover, this court need not conduct a de novo review when a petitioner

"makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

On December 10, 2014, Yeary filed his objections to the PF&R. With respect to those objections, the court has conducted a de novo review.

## II. Analysis

On April 1, 2011, Yeary was arrested by Kentucky authorities on local theft and fraud charges. See Declaration of Alan Ray (Exhibit to ECF No. 5) at ¶ 5. Thereafter, on June 3, 2011, pursuant to a writ of habeas corpus ad prosequendum, the federal government "borrowed" Yeary from Kentucky state authorities to face federal charges in the United States District Court for the Eastern District of Kentucky. See id. at ¶¶ 6, 7. On April 17, 2012, Yeary was sentenced to a total term of imprisonment of 130 months on the federal charges. See id. at ¶ 7. The judgment order was silent as to whether the federal sentence was to run concurrent or consecutive to the state sentence that had not yet been imposed. See Exhibit B to Ray. Decl. (ECF No. 5-2).[1] On

---

[1] Federal courts have the discretion to order a federal sentence to run concurrent with or consecutive to a state sentence that has yet to be imposed. See Setser v United States, 132 S. Ct. 1463, 1468 (2012). "When a federal sentence is silent on the matter, a statutory presumption is triggered; multiple sentences imposed at different times – even as between state and federal sentences – run consecutively." Newman v. Cozza-Rhodes,

April 25, 2012, Yeary was returned to state custody. See Ray Decl. at ¶ 8.

On October 8, 2012, Yeary was sentenced by the Commonwealth of Kentucky on his state charges to a total term of imprisonment of five years. See id. at ¶ 9. The Judgment and Sentence imposed by the Letcher County Circuit Court indicated that Yeary's state sentence should run concurrent to his previously imposed federal sentence. See Exhibit C to Ray Decl. (ECF No. 5-2).

On January 9, 2013, Yeary was erroneously designated to USP McCreary. See Declaration of Sharon Wahl (Exhibit 1 to ECF No. 11) at ¶ 3.[2] Upon discovering the error, on May 1, 2013, the BOP returned Yeary to state custody to complete the sentenced imposed

---

526 F. App'x 818, 822 (10th Cir. Apr. 24, 2013) (citing 18 U.S.C. § 3584(a)). Therefore, Yeary's federal sentence was presumptively consecutive to his state sentence unless the Attorney General designates a state facility for service of that sentence. See Romandine v. United States, 206 F.3d 731, 738 (7th Cir. 2000). The BOP's letter of December 27, 2013 to the federal sentencing judge inquiring whether the court wished for Yeary's federal and state sentences to run concurrently went unanswered. See Exhibit G to Ray Decl. (ECF No. 5-3). The federal court's silence on this question was one factor considered by the BOP in denying Yeary's request for nunc pro tunc designation. Magistrate Judge VanDervort concluded that the BOP had properly considered Yeary's request for nunc pro tunc designation and Yeary did not challenge that aspect of the PF&R in his objections.

[2] According to Wahl, the United States Marshal's Service (USMS) was responsible for the error in that it requested a designation for Yeary when it should not have done so. See Wahl Decl. at ¶ 3.

upon him by the Commonwealth of Kentucky. See id. On August 23, 2013, Yeary was released into federal custody to commence serving his federal sentence. See Ray Decl. at ¶ 11.

Yeary argues that the BOP is improperly calculating his term of imprisonment. Specifically, he contends that his federal sentence commenced on November 14, 2012, when he was transferred to Grayson County Detention Center awaiting transfer to USP McCreary. See ECF No. 16 at p.5.[3] Yeary also argues that he should receive credit against his federal sentence from the time of his arrest on April 1, 2011. See id.

Magistrate Judge VanDervort concluded that Yeary's federal sentence commenced on August 23, 2013. He further concluded that Yeary's erroneous designation to USP McCreary was not a waiver of the Commonwealth of Kentucky's primary jurisdiction. With respect to Yeary's argument that he was entitled to prior custody credit from April 1, 2011, Magistrate Judge VanDervort concluded that Yeary was not entitled to such credit because that time was credited against his state sentence.

Yeary's objections to Magistrate Judge VanDervort's PF&R are directed to towards these conclusions. Yeary contends that the PF&R wrongly finds that his designation to USP McCreary was erroneous because he was transferred to federal custody "without

---

[3] In his Application under 28 U.S.C. § 2241, Yeary contended that his federal sentence began on April 17, 2012, when he was sentenced in federal court.

4

a Writ of Habeas Corpus ad Prosequendum or a state detainer, evidence that both the United States and the State of Kentucky agreed to a permanent change of custody." ECF No. 16 at p.1.

Significant to the resolution of Yeary's claims are an understanding of primary jurisdiction, sentence computation, and custody credit. "The concept of primary jurisdiction refers to 'the priority of service regarding a defendant's contemporaneous obligations to multiple sovereigns, whereby a defendant will fulfill his obligations to the sovereign with primary jurisdiction over him before any others.'" Trowell v. Beeler, 135 F. App'x 590, n.2 2005 WL 1181858, *2 n. 2 (4th Cir. May 19, 2005)(quoting Savvas Diacosavvas, Note, Vertical Conflicts in Sentencing Practices: Custody, Credit, and Concurrency, 57 N.Y.U. Ann. Surv. Am. L. 207, 210 (2000).). As to how this doctrine plays out when a prisoner may be needed to answer charges in the court that does not have primary jurisdiction, one court has explained:

> When an inmate has sentences imposed by federal and state authorities, the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied. U.S v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) (restating this principle of primary jurisdiction as set out in Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)). "A detainer neither effects a transfer of a prisoner from state to federal custody nor transforms state custody into federal custody by operation of law." Thomas v. Whalen, 962 F.2d 358, 360 (4th Cir. 1992). Similarly, a writ of habeas corpus ad prosequendum does not change the defendant's primary custody status, as the writ only authorizes federal

> authorities to "borrow" the defendant for court proceedings. Id. at 358 n. 3 (citing other cases). A federal sentence commences "on the date when the defendant is received in custody awaiting transportation to. . . the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

Fisher v. O'Brien, No. 7:08CV00569, 2009 WL 1382385, *2 (W.D. Va. May 15, 2009); see also United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998) ("A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.").

"[C]omputation of a federal sentence requires consideration of two separate issues" – "the commencement date of the federal sentence and . . . the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254 (10th Cir. 2006); see also Hayden v. Caraway, Civil Action No. JFM-11-173, 2012 WL 203398, *4 (D. Md. Jan. 23, 2012) ("Authority to calculate a federal prisoner's period of incarceration for the sentence imposed and to provide credit for time served is delegated to the Attorney General, who exercises it through the BOP."). Pursuant to 18 U.S.C. § 3585(a), a federal sentence

6

"commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  And, with respect to the issue of awarding prior custody credit, 18 U.S.C. § 3585(b) allows a prisoner to receive credit against his federal sentence only for that time "that has not been credited against another sentence."

In this case, it is undisputed that, as the first arresting sovereign, the Commonwealth of Kentucky had primary jurisdiction over Yeary.  Resolution of Yeary's claims and objections hinges on whether the state court relinquished its primary jurisdiction by turning Yeary over to federal authorities when he was designated to USP McCreary.  The court agrees with Magistrate Judge VanDervort that Kentucky did not relinquish primary custody over Yeary and that his federal sentence did not commence until the State issued a Notice of Discharge with an effective date of August 23, 2013.

In support of his position that his federal sentence commenced when he was erroneously designated to USP McCreary and transferred, albeit briefly, to federal custody, Yeary relies on a decision from the United States Court of Appeals for the Tenth Circuit, <u>Weekes v. Fleming</u>, 301 F.3d 1175 (10th Cir. 2002).  In that case, Weekes, who was in state custody, was transferred to federal custody to answer federal drug charges.  <u>See</u> <u>id.</u> at 1177.

7

Weekes returned to state custody pursuant to a writ of habeas corpus ad prosequendum for a hearing on state charges. See id. After the state court hearing, Weekes was returned to federal custody where he was sentenced on the federal charges and delivered to a federal facility. See id. Approximately two months later, Weekes was returned to state custody to serve his state sentence. See id. at 1178.

After the BOP refused to award him credit for the time he spent in state custody, Weekes argued that his federal sentence commenced when he was designated to be transferred to serve his time at the federal penitentiary and continued to run despite the fact that the United States sent him to the state authorities to serve his state sentence. See id. The appeals court agreed with Weekes because the United States could not establish that the transfer of custody by the state authorities to the federal authorities was conditional or temporary thereby creating a presumption that the sovereigns "agreed to a permanent change of custody." Id. at 1181. Important to the Weekes court was the fact that the transfer of custody was effected without a document indicating that the transfer is temporary, such as a writ of habeas corpus ad prosequendum. See id. Also significant was the subsequent conduct of both the United States and the state which "reinforced the presumption that a permanent transfer was intended." Stroble v. Terrell, 200 F. App'x 811, 815 (10th Cir.

Oct. 17, 2006). For example, the state used an ad prosequendum writ to regain custody of Weekes. See Weekes, 301 F.3d at 1181. As well, the state's sentencing order provided that Weekes' state sentence was to run concurrently with a future federal sentence and the state "then lodged a detainer expressly noting that his state sentence was concurrent and requesting Mr. Weekes' return to the state prison system upon completion of his federal sentence, further affirmatively showing its relinquishment of Mr. Weekes to federal primary custody." Id.

In subsequent decisions, the Tenth Circuit has denied habeas relief in similar situations where, based on the specific facts of the case considered, there was insufficient evidence to show that the state relinquished its primary custody over the prisoner. See, e.g., Binford v. United States, 436 F.3d 1252, 1253 (10th Cir. 2006); Stroble v. Terrell, 200 F. App'x 811, 816-17 (10th Cir. Oct. 17, 2006). For example, in Binford, while the petitioner was in state custody, he was released via a writ of habeas corpus ad prosequendum to federal custody to face federal charges. See Binford, 436 F.3d at 1253. Binford was subsequently sentenced on the federal charges and the sentencing documents were silent as to whether the sentence was to run consecutive or concurrent to any sentence on the pending state charges. See id. Then, "[i]nstead of returning Binford to state custody, the United States Marshals Service mistakenly delivered

Binford to the Federal Correctional Institution in El Reno, Oklahoma on April 23, 1996. After reviewing Binford's file, prison staff realized he should have been transferred immediately back to the state because the writ of habeas corpus ad prosequendum did not transfer the primary jurisdiction of custody to federal authorities. Accordingly, Binford was returned to Oklahoma state authorities on May 13, 1996." Id.

Binford argued that his federal sentence commenced when he was first mistakenly transferred to a federal facility. See id. at 1254. In rejecting Binford's argument, the appeals court noted:

> [The] continuous service rule is not a "get out of jail early card" for prisoners. Free v. Miles, 333 F.3d 550, 555 (5th Cir. 2003). . . . [Binford's] mistaken delivery to the El Reno facility was short-lived and corrected swiftly after the prison staff discovered the error. Indeed, the overall period of his incarceration is not extended beyond the time contemplated by the sentencing courts. As a result, Binford's federal sentence never began until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence.

Id. at 1256.

As in Binford, numerous courts have concluded that an erroneous designation to a federal facility does not, in and of itself, operate as a transfer of the state's primary jurisdiction to federal authorities. See, e.g., Allen v. Nash, 236 F. App'x 779, 783 (3d Cir. 2007) ("Because the designation to USP-Lewisburg was in error, it did not operate to commence Allen's

10

federal sentence.  The BOP did not have primary jurisdiction over Allen . . . ."); Stroble v. Terrell, 200 F. App'x 811, 816-17 (10th Cir. 2006) (denying inmate's § 2241 where, "although the state did file an ad prosequendum writ to regain custody over Stroble after his erroneous transfer to a federal facility, nothing else in the parties' conduct suggests they believed primary custody had transferred from the state authorities to the federal authorities as a result of that erroneous transfer. Indeed, all indications are that the federal authorities immediately realized the error and promptly returned Stroble to state custody."); Jones v. Tews, NO. CV 13-7176-CJC(AGR), 2015 WL 6501515, *4 (C.D. Cal. Sept. 25, 2015) (holding that US Marshals Service's "short-lived mistake in designating [petitioner] for federal prison" did not transfer primary jurisdiction over petitioner from state to federal authorities); Cherry v. O'Brien, No. 3:13-CV-1, 2013 WL 3152362, *6 (N.D.W. Va. June 19, 2013) (denying relief under § 2241 where prisoner was mistakenly delivered to FCI Cumberland but where "error was short-lived and corrected in about a month's time); Reed v. Holinka, No. 08-3209-RDR, 2010 WL 5093646, *4 (D. Kan. Dec. 8, 2010) ("The court finds that this case is more like Stroble and Binford than it is like Weekes.  Although there is no indication that the federal government used a writ of habeas corpus ad prosequendum to obtain custody of petitioner on May 31, 2007, the subsequent conduct of

11

the BOP and the state authorities after petitioner arrived at FCI-Marion indicates that they realized a mistake had been made and intended that the state have primary custody of petitioner."); Thomas v. Deboo, Civil Action No. 2:09cv134, 2010 WL 1440465, at *4 (N.D.W. Va. Mar. 8, 2010) (erroneous designation to BOP facility for approximately four months did not commence running of federal sentence where prisoner remained under primary jurisdiction of state); Heath v. O'Brien, 647 F. Supp.2d 618, 620 (W.D. Va. 2009) (holding that "Marshals' mistake of improperly taking custody of Heath and delivering him to USP Leavenworth" when he should have been in state custody did not entitle prisoner to habeas relief); Nelson v. U.S., Civil Action No. 06-404, 2006 WL 4472112, *5 (W.D. Pa. Dec. 14, 2006) (declining to grant habeas relief to prisoner erroneously designated to a federal facility who was in primary custody of Commonwealth of Pennsylvania at the time but was returned to state authorities approximately three months after error was discovered); cf. Hayden v. Caraway, Civil Action No. JFM-11-173, 2012 WL 203398, *5 (D. Md. Jan. 23, 2012) ("An apparent administrative error in transferring Hayden to the USMS while state charges and a parole violator warrant detainer were pending

constituted neither a relinquishment of primary jurisdiction nor commenced his federal sentence.").[4]

Like many of the cases cited above, the court finds that Yeary's case is more akin to Binford than Weekes and that, notwithstanding the erroneous designation to USP McCreary, the Commonwealth of Kentucky did not relinquish its primary jurisdiction over Yeary. "[A]n erroneous designation does not automatically cede jurisdiction. The Court makes this determination because this Court believes that a prisoner's time of incarceration should be governed by the sentence, not by administrative error." Cannon v. Deboo, Civil Action No. 5:08CV69, 2009 WL 692149, *15 (N.D.W. Va. Mar. 13, 2009).

Yeary's argument also fails because, if given the relief he requests, he will receive credit for time towards his federal

---

[4] Apparently erroneous designations are not as uncommon as one might imagine given that the BOP has developed guidance for when such a circumstance occurs. See BOP Program Statement 5160.05; see also Peterson v. Marberry, Civil Action No. 07-56 Erie, 2009 WL 55913, *4 (W.D. Pa. Jan. 5, 2009) ("Finally, the BOP acknowledges that there are occasions when an inmate will have been improperly designated to a federal detention center for commencement of his federal sentence, when he should have been returned to, or remained in, state custody for the completion of a state sentence that must be served first."). Program Statement 5160.05 directs that "[w]hen it has been determined an inmate was committed improperly to federal custody and primary jurisdiction resides with a state sovereign . . . [the BOP] staff . . . [will] make every effort to return the inmate to state custody." PS 5160.05. The guidance further provides that "[a] return to the state means that the federal sentence should be considered as not having commenced since transfer to the Bureau was in error . . . ." Id. (emphasis in original).

sentence that has already been credited against his state sentence. As noted above, this is prohibited by statute. As one court explained in rejecting a similar challenge,

> Petitioner essentially seeks to be given federal-sentence credit for a period of time that was already credited toward completion of his <u>state</u> sentence. Prisoners typically are entitled to pre-sentencing credit against their sentences, but the same block of time generally cannot be credited to both a federal and state sentence (or to two different federal sentences). 18 U.S.C. § 3585(b) (permitting credit only for a period of time "that has not been credited against another sentence"). "Congress made clear" in enacting this statute, the Supreme Court has explained, "that a defendant [can]not receive a double credit for his detention time." <u>United States v. Wilson</u>, 503 U.S. 329, 337 (1992); <u>Allen v. Crabtree</u>, 153 F.3d 1030, 1033 (9th Cir. 1998) (§ 3585(b) disallows double crediting).
>
> \* \* \*
>
> Here, Petitioner was first arrested by North Carolina state officials, not federal officials. His North Carolina state term was satisfied upon his release in 2007. The records cited above reflect that Petitioner received credit towards his <u>state</u> sentence for the time between his arrest and his 2007 release by the state. He thus is not entitled to double credit, i.e., the same amount of credit applied against his <u>federal</u> sentence, for any portion of that time, as he seeks here.

<u>Jones v. Tews</u>, NO. CV 13-7176-CJC(AGR), 2015 WL 6501515, *2-3 (C.D. Cal. Sept. 25, 2015) (emphasis in original).

Finally, while it is true that the state court Judgment provided for concurrent sentences, the federal Judgment did not. "That the state court ordered the state sentence to run concurrent with the federal sentence is of no moment. A state court cannot alter a federal sentence." <u>Newman v. Cozza-Rhodes</u>,

526 F. App'x 818, 822 n.9 (10th Cir. Apr. 24, 2013); see also Allen v. Nash, 236 F. App'x 779, 784 (3d Cir. 2007) ("While a state court may express its intent that a defendant's state sentence run concurrently with a previously imposed federal sentence, this intent is not binding on federal courts or the BOP"); Bloomgren v. Belaski, 948 F.2d 688, 691 (10th Cir. 1991) ("The determination by federal authorities that Bloomgren's federal sentence would run consecutively to his state sentence is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained state conviction.").

Based on the foregoing, Yeary's objections are **OVERRULED**.

### III. Conclusion

For the reasons stated above:

1) Yeary's application for Writ of Habeas Corpus under 28 U.S.C. § 2241 is **DISMISSED**;[5]

2) The Clerk is **DIRECTED** to remove this case from the court's active docket; and

3) Yeary's motion for appointment of counsel (ECF No. 24) is **DENIED** as moot.

---

[5] Should the court find that Yeary is not entitled to habeas relief herein, Yeary asks the court to dismiss his case without prejudice so he might go back to state court to attack Kentucky's alleged breach of its plea bargain with Yeary. The court has not addressed Yeary's contention that the Commonwealth of Kentucky violated the terms of Yeary's plea agreement when it accepted him back into state custody on May 1, 2013.

The Clerk is further directed to send a copy of this Memorandum Opinion and Order to plaintiff and counsel of record.

IT IS SO ORDERED this 30th day of September, 2016.

ENTER:

*David A. Faber* (signature)

David A. Faber
Senior United States District Judge